(107 So. 386)

No. 27643.

## STATE v. SMITH.

(Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law** ⚖︎972.

A motion in arrest of judgment cannot be sustained, where based on matters not patent on the face of the record.

2. **Homicide** ⚖︎142(5).

In prosecution for manslaughter, proof in respect to name of person killed must correspond to indictment setting forth that name.

3. **Names** ⚖︎16(3).

Where indictment charged killing Blake, but proof showed that deceased's name was Black, doctrine of idem sonans was not applicable.

4. **Criminal law** ⚖︎1158(1).

The Supreme Court has power to pass on question of idem sonans, where there is a clear difference between the pronunciation of the names.

5. **Indictment and information** ⚖︎160.

Indictment for manslaughter should be amended, as authorized by Rev. St. § 1047, when there is variance between allegation setting forth name of deceased and evidence in proof thereof.

6. **Indictment and information** ⚖︎160—Statute authorizes amendment of indictments with reference to variances (Rev. St. § 1047).

The purpose of Rev. St. § 1047, is to authorize the amendment of indictments with reference to certain variances not material to merits of case, and not prejudicial to defense, upon the order of court without the consent of the grand jury, which was required at common law, and it does not seek to change common law as to what shall be deemed a variance, but its purpose is to provide a remedy.

7. **Indictment and information** ⚖︎160.

The remedy provided by Rev. St. § 1047, in case of variances in indictment and proof, should be followed.

Thompson and Land, JJ., dissenting.

Appeal from Twenty-Second Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

J. M. Smith was convicted of manslaughter, and he appeals. Verdict and sentence annulled and set aside, and case remanded for further proceedings.

Fred J. Heintz, of Covington, L. V. Cooley, of Slidell, and Ivy G. Kittredge, of New Orleans, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and C. S. Frederick, Dist. Atty., of Covington (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

OVERTON, J. The grand jury in and for the parish of St. Tammany returned a true bill against defendant for manslaughter. The bill charges him with having unlawfully killed and slain one Willis B. Blake. Defendant was tried on the bill, found guilty,

and sentenced to the penitentiary for a period of not less than five nor more than seven years. He has appealed to this court, and relies for reversal on six bills of exception, all of which involve, in one form or another, the same point.

In bill No. 1, it appears that, while the acting coroner was on the stand, as a witness for the state, he was asked the following question by the district attorney, to wit:

"Dr. Griffith, I understand that the name of the deceased, over whose dead body you held an inquest in the town of Slidell, on the 13th of June 1925, was Willis W. Black."

The answer was: "That was the name under which I held the inquest." Here the defendant objected "to any evidence to prove the death of any man other than Willis B. Blake, the name alleged in the indictment." The court overruled the objection.

In the second bill of exception it appears, that, in connection with the evidence of Dr. Griffith, the district attorney offered the procés verbal of the coroner's inquest to prove the death of the deceased. The procés verbal shows that Willis W. Black was killed. Defendant objected to the evidence, because it proves the death of Willis W. Black, when the indictment charges the killing of Willis B. Blake. The court overruled the objection.

In bill No. 3 it appears that P. A. Saxon, a witness for the state, testified that he was present when a man named Black was killed. The defendant objected to the question, unsuccessfully, on the ground that the indictment is for the killing of one Blake.

In bill No. 4, it appears that Hosea Parker, a witness for the state, was asked: "Where is Black now?" Defendant objected to the question, unsuccessfully, on the ground just stated. The answer was that he is dead.

[1] Bills No. 5 and No. 6 were taken to the overruling, respectively, of a motion in arrest of judgment and of a motion for a new trial. It will be unnecessary for us to con-sider these two bills or to mention them further; in fact, the motion in arrest cannot be sustained, because it is based on matters not patent on the face of the record.

The evidence attached to the bills of exception shows that the deceased was a fugitive from justice; that he was arrested, and, while being taken to jail, attempted to escape, and was killed by defendant. It also shows that the deceased was known as Willis W. Black, and not as Willis B. Blake, the name given him in the bill of indictment, and that some one, claiming to be the brother of the deceased, said, after the deceased was killed, that his true name was Whitlock. The trial judge says in a per curiam, attached to one of the bills, that the deceased was also known as "Blake," the name used in the indictment, but as to this our learned brother is in error, for, as we have said, the evidence attached to the bills, which is controlling, shows that he was known as Black and not as Blake.

The trial judge did not order the indictment amended by inserting the name Willis W. Black, by which the deceased was known, nor, for that matter, was any motion made to amend it, in any respect, but the trial was conducted as if no amendment was necessary.

From the foregoing, it appears that the question is presented, whether, under an indictment showing that the defendant killed Willis B. Blake, under which name the deceased was not known, evidence is admissible, in the absence of an amendment to the indictment, to show that he killed Willis W. Black, where it is evident that the grand jury, in using the name Willis B. Blake, intended to refer to the same person that the name Willis W. Black identifies.

Under the common law of England (the rules of procedure, in which, are our law, except in so far as we have changed them by statute), the rule is that—

"The party injured, or any other person named in the indictment, if known, must be de-

scribed with certainty; if an individual he must be described by his christian and surname; if a corporation by their name of incorporation. * * * But if the party be described by the name by which he is usually known that will be sufficient. * * * " Archbold's Criminal Practice and Pleading (7th Ed.) pp. 265, 267.

As the name of the person injured must be alleged in the indictment, if known, or that by which he is usually known, it follows that, in respect to the name, there should not be a variance between the allegation and the proof. Thus it has been held that:

"Where, on the indictment of Frances Clark, for the murder of 'George Lakeman Clark, a base-born infant male child,' it appeared in evidence that the deceased was a bastard son of the prisoner, and that she murdered it, as charged in the indictment, but that the child was christened George Lakeman, being the name of its reputed father, and that it was called George Lakeman, and not by any other name known to the witnesses, and that the prisoner called it George Lakeman, the judges held that, as the child had not obtained his mother's name by reputation, he was improperly called Clark in the indictment, and as there was nothing but the name to identify him in the indictment, the conviction could not be supported. Rex v. Clark, Russ. & Ry. C. C. R. 358"—quoted from footnote to Archbold's Criminal Practice and Pleadings. (7th Ed.) p. 403.

And again:

"Where an illegitimate child, three weeks old, had been baptized by the name of 'Eliza,' but no surname was mentioned at the time of baptism, and neither the register, nor any copy of it, was produced at the trial, and an indictment for murder described her as 'Eliza Waters,' Waters being the name of her mother, it was held, upon a case reserved, that the child had not acquired the name of Waters by reputation, and that the conviction was wrong. Rex v. Waters, R. & M. C. C. R. 457; s. c., 7 C. & P. 250"—quoted from footnote to Archbold's Criminal Practice and Pleading (7th Ed.) pp. 403, 404.

And in Corpus Juris it is said:

"Where the names of persons other than accused are necessarily alleged, they must be proved, or it must be proved that the persons were commonly known by the names alleged. This rule applies, for example, to the name of the person injured. * * * " 31 C. J. p. 836, § 442.

[2] From the foregoing it appears that the proof, in respect to the name of the person killed, must correspond to the allegation setting forth that name. But counsel for the state contend that, under the doctrine of idem sonans, the proof does so correspond.

With reference to the doctrine of idem sonans it is said:

"The law does not regard the spelling of names so much as their sound. By the doctrine of idem sonans, if two names, although spelled differently, sound alike, they are to be regarded as the same. Great latitude is allowed in the spelling and pronunciation of proper names, and in all legal proceedings, whether civil or criminal, if two names, as commonly pronounced in the English language, are sounded alike, a variance in their spelling is immaterial. Even slight difference in their pronunciation is unimportant; if the attentive ear finds difficulty in distinguishing the two names when pronounced, they are idem sonans. The names will be presumed to be pronounced according to the ordinary rules of pronunciation of the English language, unless it is proved that they belong to another language and are pronounced differently in the language to which they belong, and also in the general usage of the community. * * * " 29 Cyc. pp. 272–275, verbo "Names," VIII.

[3] Here, the two names are not only spelled differently, but there is a clear difference between the pronunciation of "Black" and "Blake." The attentive ear finds no difficulty whatever in distinguishing the difference.

[4] But counsel for the state say that, by reference to the Century Dictionary, vol. 1, p. 575, it will be found that "blake" is a Middle English form of the word "black." That is true, and we may add, in passing, that that form of the word "black" has become obsolete. However, as will appear from the same reference, the word "blake" is still in use, but its meaning is different from the meaning of the word "black," and its pronunciation is different. While the name "Blake" probably was derived from the ob-

solete form of the word "black," yet we are not directly concerned with the meaning and derivation of words, but with the pronunciation of proper names, and, as stated, there is a clear difference between the pronunciation of the names "Blake" and "Black." By reason of that difference we are of the opinion that the doctrine of idem sonans is not applicable here. But counsel for the prosecution say that the question of idem sonans is one for the jury. However, in our opinion, we have power to pass upon it, at least, where there is a clear difference between the pronunciation of the names, as is the case here.

[5] The indictment in this case might and should have been amended when it appeared that there was a variance between the allegation setting forth the name of the deceased and the evidence offered in proof thereof. This course would have been authorized by section 1047 of the Revised Statutes, the pertinent part of which reads as follows:

"Whenever on or before the trial of any indictment for any crime or misdemeanor, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, * * * or in the name or description of any person, * * * therein stated or alleged to be injured or damaged, or intended to be injured or damaged by the commission of such offense; or in the christian name or surname, or both christian name and surname, or other description whatsoever, of any person whomsoever therein named or described, * * * it shall be lawful for the court before which the trial shall be had, *if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense,* to order such indictment to be amended according to the proof, both in that part of the indictment where such variance occurs and in every other part of the indictment which it may become necessary to amend; the trial to be had before the same or another jury, as the court shall think reasonable; and after any such amendment the trial * * * shall be proceeded with, in the same manner in all respects as if no such variance had occurred or amendments been made. * * * " (Italics ours.)

This law appears in the Acts of 1855, and was probably first adopted in that year, and later incorporated in the Revised Statutes of 1870 as section 1047, and may be said to be substantially the same, with reference to the amendment of indictments, and in language almost the same as the English Procedure Act of 1851, 14 and 15 Victoria, c. 100.

[6, 7] At common law an indictment cannot be amended without the consent of the grand jury. The purpose of this law (the act of 1855, now section 1047 of the Revised Statutes) is to authorize the amendment of indictments with reference to certain variances, not material to the merits of the case, and not prejudicial to its defense, upon the order of the court, without the consent of the grand jury. The act, or section of the Revised Statutes, recognizes that such variances occur, and recognizes impliedly the effect thereof at common law. It does not seek to change the common law as to what shall be deemed a variance, but its purpose is to provide a remedy. That remedy should be followed in order to make it effective. Thus it is said:

"Under a statute authorizing the amendment of indictments to conform to the proofs, where unprejudicial to accused, the order of the court does not work the amendment; but there must be a manual change of the indictment, and where this is not done the conviction will be set aside." 31 C. J. p. 826, § 421.

It follows that the result must be the same, even with stronger reason, where no application has been made to amend and no amendment ordered.

Without the proper amendment of the indictment, the evidence offered in this case should not have been received, over objection, and the verdict, therefore, should be set aside.

For the reasons assigned, the verdict and the sentence appealed from are annulled and set aside, and this case is remanded to be proceeded with according to law.

LAND, J., dissents.

ST. PAUL, J. I concur in both opinion and decree herein handed down. The names

"*Black*" and "*Blake*" are not idem sonans, although the two names *may* signify the same, for they do not *sound* alike, being pronounced differently.

There was, therefore, a fatal variance between the proof offered at the trial and the *description* given in the indictment; and hence, upon the discovery of this variance, the *indictment* should have been amended to accord with the facts, as permitted by section 1047 of the Revised Statutes of 1870, before proceeding further with the trial.

As the accused was not charged with a *capital offense*, but only with *manslaughter*, I concede the right of the state, in this instance, to amend the indictment under R. S. § 1047. But it is as well to state at this time, as a caution to prosecuting attorneys and to avoid the occurrence of futile trials and unnecessary delays, that I do not concede the right of the state to amend an indictment in a *capital charge* without the concurrence of the grand jury.

When the statute of 1855 (now R. S. § 1047) was adopted, following the English Criminal Procedure Act of 1851 (14 and 15 Victoria, c. 100), the method of preferring charges for crimes, *in all cases*, lay exclusively within legislative control; for the Constitution of 1852 (article 103), then in force, provided simply that "prosecutions shall be by indictment or information"; leaving it therefore to the Legislature to provide for prosecutions in all cases, even capital, by information only. The term "*grand jury*" is not so much as mentioned in that Constitution. It was the same with the former Constitutions of 1812 and of 1845, and with the later Constitution of 1868, under which the Revised Statutes of 1870 were enacted.

So that, until then, there was no constitutional requirement in any case that the prosecution should be by *indictment by a grand jury*, and the Legislature was free in all cases to direct the *framing*, as well as the *amend-* ment, of indictments, in such manner as it deemed proper, or to dispense with indictments altogether, and provide for prosecutions exclusively by information only. And hence, until then, the only reason why *capital* offenses could be prosecuted upon indictment only, was the act of 1855, re-enacted as section 977 of the Revised Statutes of 1870 (now amended by Act 156 of 1898), which forbade it.

But into the Constitution of 1879 (article 5) was put a *proviso* as follows:

"Provided, that no person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury, except, etc."

Which *proviso* was repeated in the Constitution of 1898 (article 9), and in our present Constitution of 1921 (article 1, § 9).

And as this *proviso* (applicable under our Constitution to *capital* crimes only) is in the same words as the Fifth Amendment to the Constitution of the United States (applicable not only to capital but also to "otherwise infamous" crimes), it follows that it must have the same meaning in both instruments, as well as in the Constitutions of other states having similar provisions.

But "in many jurisdictions an indictment or presentment by a grand jury is expressly required in the case of certain crimes by constitutional provision; and in such cases a prosecution in any other mode, even under legislative sanction, is unauthorized and an absolute nullity for want of jurisdiction." 31 Corp. Jur. 565 (verbo Indictments and Informations, § 13).

And since "at common law an indictment (being the finding of a grand jury upon oath and depending upon this fact, among others, for its validity) cannot be amended by the court or the prosecuting officer in any matter of substance without the concurrence of the grand jury which presented it, * * * [it follows that] a fortiori, there can be no such amendment where the Constitution requires

an indictment by a grand jury." 31 Corp. Jur. 823, 824, § 413.

Hence, "where such a form of accusation is required by the Constitution the Legislature cannot authorize the court to amend an indictment in matter of substance, for as amended it would not be the finding of the grand jury." 31 Corp. Jur. 825, § 417.

And "no doubt, the district attorney, who has himself filed an information, may be allowed to amend it. * * * *But the same is not true of an indictment; which emanates, not from the district attorney, but from the grand jury.*" (Italics mine.) State v. Jack, 72 So. 429, 139 La. 885.

In such cases the indictment should be amended by the grand jury which presented it, or the defendant should be indicted anew.

I therefore concur.

THOMPSON, J. (dissenting). The sole complaint of defendant, and which has been sustained by the majority opinion as reversible error, is that there was a variance between the allegation of the indictment and the evidence introduced on the trial with respect to the name of the party alleged to have been killed.

It is conceded that the state could have amended the indictment and that, if such amendment had been made, the defendant would have had no legal cause for complaint.

It appears that the deceased was a stranger in the community where he was killed and had but few acquaintances and among whom he was known as Willis W. Black.

This was the name given by the defendant to the coroner who held the inquest over the dead body of the deceased. It developed on the trial that the real name of the deceased was Whitlock.

Through some error or inadvertence, or perhaps because the deceased's name had been so given to the grand jury, that body caused the name of the party killed to be inserted in the indictment as Willis B. Blake.

160 LA.—17

The deceased was arrested without a warrant as a supposed fugitive from justice from the state of Mississippi.

While endeavoring to break away from the officers and to make his escape, he was shot in the back by the defendant, and killed.

There was no question as to the identity of the party killed. The corpus delicti was fully established. The defendant admitted at the coroner's inquest that he had killed the man over whose body the inquest was held. There was no attempt by the state in questioning the witnesses as to the name of the deceased to substitute a different and distinct person from the one who was actually killed by the defendant. That would not have been permissible either by amendment to the indictment or by proof, as was held in State v. Morgan, 35 La. Ann. 1139.

It perhaps would have been the better practice to have amended the indictment, when the state learned from the evidence on the trial that the deceased was sometimes called Black or Whitlock instead of Blake; such an amendment being allowable under section 1047, Revised Statutes.

I am of the opinion, however, that this was not essential under the facts of this case nor absolutely required under the statute referred to.

The statute says that, where there is a variance in the name, the court may, if it shall consider such variance not material to the merits, have the indictment amended.

And in section 1063, R. S., it is provided that no indictment shall be held insufficient because of the fact that a person mentioned in the indictment is designated by a name of office, or other descriptive appellation, instead of his proper name.

This court is not justified in holding the language of the statute mandatory when the language itself clearly leaves the question of amending the indictment to the discretion of the trial judge where the subject of the

amendment is immaterial and does not go to the essence of the crime charged.

That the error or mistake in the name of the deceased is a mere formal defect has been frequently decided by this court. The name of the person killed is not an essential ingredient of the crime charged against the defendant, and, as we have already stated in this case, it was not the naming of the wrong person, but the giving of the wrong name to the right person.

The evidence brought up with the bills of exception shows that the defendant, better than any one else, knew the deceased and the name by which he was known.

He was therefore called upon to demur to the indictment and give to the state the benefit of his knowledge in that respect, when he found that the indictment served upon him in advance of the trial gave the wrong name of the deceased.

Section 18 of Act 123 of 1855, now section 1064, R. S., provides that every objection to any indictment for any formal defect apparent on the face thereof shall be taken by demurrer or motion to quash such indictment, before the jury shall be sworn, and not afterwards.

Here, it is true, the defect was not apparent on the face of the indictment, but that it was a mere formal defect upon a matter not material is unquestioned.

That the defendant knew of such defect before going to trial can hardly be disputed.

Having gone to trial without making the objection to the indictment; having concealed from the state the knowledge which he possessed, that the indictment did not contain the correct name of the deceased, he ought not now be heard to complain and to get the benefit of an error, if error there be, which he could have avoided by speaking at the proper time.

No injury has resulted to the defendant, and it is idle to argue that, if this conviction is maintained, the defendant can be prosecuted again for killing the same person under the name of Black or of any other name.

The accused has had a fair trial. A jury which alone has the power of passing upon the facts and determining the guilt or innocence of the accused has adjudged that he was guilty of unlawfully killing a particular human being.

That verdict ought not to be set aside simply because the state gave the wrong name of the deceased in the indictment, when, as a matter of fact, he was known by different names in the community where the killing occurred, and when his real name was not then known to the public prosecutor, but was known to the defendant. I therefore dissent.